Turner, J.
 

 Alleging that respondent was in possession of information of specific sales of tangible personal property made by The Great Atlantic & Pacific Tea Company (hereinafter referred to as A. & P.) and The Kroger Grocery & Baking Company (hereinafter called Kroger)’ during the year 1935, relator sought and the Court of Appeals granted a peremptory writ of mandamus against respondent as Tax Commissioner directing him to make assessments agaixxst both A. & P. and Kroger, 'according to formulae contained in the couxd’s journal entry, the details of which will be discussed later.
 

 Whether the action of the Coux’t of Appeals should be affirmed or reversed by this court will depexxd upon the provisions of axx act providing for the levy and collectioxx of a tax upoxx. the sale of tangible personal property at retail, enacted by the 90th General Assembly (115 Ohio Laws, pt. 2, 306
 
 et seq.),
 
 which was effective during the year 1935, the principal provisions of which act have been outlined in the foregoing statement of facts.
 

 At the threshold of our consideration of this ease we are met with the claim by appellee that:
 

 “On this appeal the Supreme Court is limited to a coxxsideration of the findings of fact and conclusions of law made by the referee, as modified by the Court of Appeals in its entry, since the record does not con
 
 *91
 
 tain a bill of exceptions, allowed and signed by the referee, as required by law.”
 

 As appellant has made no assignment of error in respect of the reference of this case, we shall pass the question with such comment only as is necessary to determine the foregoing question raised by appellee.
 

 Assuming, without deciding, that a Court of Appeals may appoint a referee in a mandamus action, we have carefully searched the record and have been unable to find where the Court of Appeals appointed a referee in this case.
 

 The record discloses that on March 25, 1942, .the Court of Appeals referred the cause to “Carrington T. Marshall, who is hereby appointed special master commissioner to take the testimony in writing in this cáse, report it to the court, and therewith his conclusions on the law and facts involved in the issues.” Thereafter the following journal entry appears in the record under date of May 12, 1942:
 

 “This day this cause came on further to be heard upon the application of the special master commissioner for a clearer definition of his authority and the court being duly advised in the premises it is ordered that the said special master commissioner be invested with all the powers of a referee in chancery.”
 

 Assuming, but not deciding, that such an order may properly be made in an action in mandamus, the appointment was not thereby changed from special master commissioner to referee. While the findings of fact and conclusions of law are signed as referee, the allowance of the .bill of exceptions which was ordered by the Court of Appeals was signed: ‘ ‘ Special Master Commissioner with all the powers of a referee in chancery. ’ ’
 

 At the opening of the hearing before the special master commissioner the following took place:
 

 “The Referee': Now that there may be no question
 
 *92
 
 about what I understand my duties to be, I am assigned to hear this as referee.
 

 “Mr. Linton: Let the record show that the defendant understands that the hearing is before Mr. Marshall ■ as special master commissioner and not as referee.”
 

 In the
 
 per curiam
 
 opinion of this court in the case of
 
 Neil House Co.
 
 v.
 
 Shafer,
 
 121 Ohio St., 605, 172 N. E., 374, it was said:
 

 “The consent to refer to a master commissioner being only a consent to a limited reference, cannot be enlarged by the court into a general reference. ’ ’
 

 In the instant case there was no consent to a reference. The reference was made upon the application of the “plaintiff” under the theory that the parties were not entitled to a trial by jury. Prior to the 1912 Amendments to the Constitution,,the appeal of a mandamus case was triable
 
 de novo
 
 in the Circuit Court, not because it was a chancery case but for the reason that the statute authorized a
 
 ele novo
 
 trial upon appeal in all cases where the parties were not entitled to a trial by jury. Bates Revised Statutes, 5226. Mandamus is an extraordinary
 
 legal
 
 remedy. 25 Ohio Jurisprudence, 973, 976, Sections 1 and 4.
 

 In the case of
 
 Dillon
 
 v.
 
 City of Cleveland,
 
 117 Ohio St., 258, 158 N. E., 606, the fifth paragraph of the syllabus reads:
 

 “The Court of Appeals has both inherent and statutory authority to direct a reference
 
 in chancery cases
 
 pending in that court on appeal from the Court of Common Pleas and has power to direct a referee to make findings of fact and report conclusions of law.”
 

 The record in that case shows that the parties had consented to the reference. In the course of the opinion Chief Justice Marshall went into the history of reference in Ohio.
 

 After tracing' the history of references in Ohio and
 
 *93
 
 discussing the early confusion on the subject, it is pointed out in 35 Ohio Jurisprudence, 101, Section 3, that:
 

 “Practically, the effect of a report of a master commissioner upon the mind of the court may not, in a majority of cases, be very different from that of the finding of a referee in a legal reference. But where the court acts upon a master’s report, it is to be regarded as declaring its own conclusions of fact and law - while in acting upon the report of a referee, at least in a legal matter, the court is to be regarded as rendering its judgment upon facts found by the referee, as it would do upon the finding of a jury. Theoretically, therefore, the responsibility of the judge is greater in the case of a master’s report than in that of a referee. The master commissioner acts simply and solely for the convenience and information of the court, and his report has no force until confirmed. It differs in this respect from the decision of a referee, which, by the Code, stands as the decision of the court.” (This code reference is to procedure-in the Coxirt of Common Pleas.) ' ■
 

 In 16 Ohio Jurisprudence, 306, Section 146, the practice of reference to a master commissioner is discussed.
 

 In 35 Ohio Jurisprudence, 120, Section 31, it is said:
 

 “Confusion is sometimes caused in the matter of correct procedure in trials before referees largely due to the practice of treating the procedure before master.commissioners and the procedure of referees as if they were identical. The two are, however, essentially different, under the provisions of the General Code; and a study of these provisions will eliminate any such confusion.”
 

 That the Court of Appeals considered that it had appointed a special master commissioner and not á referee is disclosed by the action of that court in di
 
 *94
 
 recting its special master commissioner to sign the bill of exceptions and by the court itself duly allowing the bill of exceptions.
 

 We find no .error in the allowance of the bill of exceptions prejudicial to the right of the appellee.
 

 In coming to the merits of this case we shall assume, without deciding, that the case of
 
 State, ex rel. Foster,
 
 v.
 
 Miller et al., Tax Commission,
 
 136 Ohio St., 295, 25 N. E. (2d), 686, together with further proceedings dismissed under the journal entry of November 20, 1940, furnishes no basis for the application of the doctrine of
 
 res judicata
 
 to all or any part of the present case. We shall also assume, without deciding, that the appellant Tax Commissioner has the right to review and redetermine the determinations of the Tax Commission of Ohio in matters which were not pending at the time such commissioner succeeded to the rights, powers and duties of the Tax Commission and in which matters no appeal was pending when the succession took place. We shall further assume, without deciding, that the Tax Commissioner is governed by no time limit applicable to the present proceeding or to' assessments under the law in effect in 1935.
 

 The sole basis for holding that the action of the Tax Commissioner was arbitrary is the master commissioner’s definition of the word “arbitrary,” to wit: “without legal reason.;” and his holding “that a refusal on his [Tax Commissioner’s] part to give notices of assessment based upon that theory of law [weighted average percentage rate], must be held to be arbitrary and an abuse of his discretion.”
 

 We have thus cleared the decks so that this matter may be disposed of finally.
 

 It will be well to note first what procedure both the Tax Commission and the Tax Commissioner were bound to follow in the premises.
 

 
 *95
 
 Section 5623, General Code, provides (and so provided at all times here in question):
 

 í í rp]ie rpas Commission of Ohio shall decide all questions that may arise with reference to the construction of any statute affecting the assessment, levy or collection of taxes, in- accordance with the advice and opinion of the Attorney General. Such opinion and the rules, regulations, orders, and instructions of the commission prescribed and issued in conformity therewith shall be binding upon all officers, who shall observe such rules and regulations and obey such orders and instructions unless and until the same are reversed, annulled or modified by a court of competent jurisdiction. ’ ’
 

 On July 24, 1936, the Attorney Genera], in response to a request therefor from the Tax Commission of Ohio rendered an opinion addressed to that commis-. sion, the syllabus of which reads (Opinions of the Attorney General, 1936, Vol. II, page 1134):
 

 “The Tax Commission of Ohio, in determining the question whether a delinquent sales tax assessment should be made against a particular vendor under the provisions of Section 5546-9c«, General Code, and, if so, the amount of such assessment, is required to determine such questions upon such information as it may have or which may come into its possession upon its investigation of the business done and sales made by the particular vendor and of the sales taxes collected and sales tax receipts cancelled by him during the period of time under investigation. The Tax Commission is not authorized under this section of the General Code, or otherwise, to determine the question of such delinquency or to make an assessment against such vendor based on an application to the amount of the gross sales receipts of the vendor during such period of time of a weighted average percentage rate determined by the Tax Commission indicating the average
 
 *96
 
 amounts of sales taxes properly collectible by vendors generally in that particular line of trade or business as compared with gross sales receipts by vendors generally in such line of. trade or business during the period of time under investigation.
 

 < < rjYjie rpax Commission of Ohio is not authorized under this section of the General Code to make a delinquency sales tax assessment against a vendor for the particular period of time under investigation based solely upon information and evidence obtained by the Tax Commission by means of a subsequent ‘spot-check’ of the vendor’s business and sales made by the Tax Commission. Although the information and evidence obtained by the Tax Commission by means of such ‘spot-check’ may be both competent and relevant if the conditions obtaining with respect to the business done and sales made by the vendor during the period of such ‘spot-check’ are comparable in amount, kind and character with the business done and sales made by the vendor during the period of time under investigation, the information and evidence thus obtained should be used with ‘any (other) information within its possession or that shall come into its possession,’ in determining the question whether any delinquency sales tax assessment should be made against the vendor, and, if so, the amount of such assessment.
 

 ‘ ‘ The Attorney General will not assume the prerogative of expressing any opinion as to the constitutionality of the provisions of Section 5546-12a, General Code, as the same were enacted in and as a part of House Bill No. 572 by the 91st General Assembly.” (A supplement to this opinion was later issued but therein consideration was given to the law in effect in-1936. Section 5546-12a, General Code, was not in effect during 1935.)
 

 After making request for the opinion the Tax Commission made the order of June 30, 1936, shown in the
 
 *97
 
 foregoing statement. After receipt of the Attorney General’s opinion the commission made the orders of September 3, 1936, and February 3, 1937, also set out •in the above statement.
 

 Under Section 1464
 
 et seq.,
 
 General Code, the Department of Taxation, consisting of the Tax Commissioner and the Board of Tax Appeals, succeeded to the functions, powers and duties which were by law devolved upon, vested in and imposed upon the Tax Commission of Ohio.
 

 Therefore, until such opinion of the Attorney General has been reversed, annulled or modified by a court of competent jurisdiction, there was and is no duty resting upon the Tax Commission or its successor, the Tax Commissioner, to take the action sought to be enforced herein by mandamus.
 

 We consider the present action a proper test of the correctness of the foregoing opinion of the Attorney General.
 

 Opposed to the foregoing opinion and advice of the Attorney General is the order of the Court of Appeals in the instant case and particularly that part which we have italicized as follows:
 

 “It is, therefore, further ordered, adjudged and decreed, that a writ of mandamus issue as prayed for in relator-plaintiff’s second amended petition, directing the defendant, Williams S. Evatt, Tax Commissioner of Ohio, to make an assessment against the vendors, The Great Atlantic & Pacific Tea Company and The Kroger Grocery & Baking Company, as a result .of retail sales made by each of said vendors for the year 1935 in the state of Ohio, based upon the following information now in the hands of said defendant, William S. Evatt, Tax Commissioner, to wit:
 

 “1. ST 10 Report of each of said vendors for 1935 in evidence in this case; 2. The report of the auditors of the Tax Commission made from the books and rec
 
 *98
 
 ords of each vendor for the year 1935, in evidence in this case; 3.
 
 the average percentage of tax collectible from taxable retail sales, in the business in which two specific vendors herein described are
 
 engaged; 4.
 
 the-mathematical probabilities demonstrated by the bracket tax rates set out in G. C. 5546-2, that the tax collectible on taxable retail sales made by the vendors could not be less than 3%.
 

 “And computed upon the basis of three (3) per cent of the sales shown to be taxable, and, thereafter give notice thereof, to said vendors, and take each and all further, necessary and additional administrative and legal steps to collect final deficiency assessments against said vendors under the sales tax act as found in House Bill No. 135, G. C., 5546-1
 
 et seg.;
 
 — all in accordance with the finding and report of the referee, as herein confirmed. * * *”
 

 In the case of
 
 State, ex rel. Foster,
 
 v.
 
 Miller et al., Tax Commission, supra,
 
 wherein the same relator was seeking a writ of mandamus to the effect,
 
 inter alia,
 
 that the Tax Commission and its members should be required to discharge the specific mandatory duties imposed by law and the Sales Tax Act, it was held:
 

 “* * * in the absence of allegation and proof that an officer or commission charged with the duty of collecting sales taxes has refused arbitrarily to collect the amount due on a specific taxable sale or sales, the writ of mandamus will not lie * *
 

 It would seem that the foregoing statement of law should apply here. This statement of the law was apparently accepted by the Court of Appeals as correct in passing upon a relator’s first and second amended petitions herein. In referring to the first amended petition the Court of Appeals said: “The amended petition is too general and lacks allegations of specific acts required under the law”. In its decision upon the second amended petition the Court of Appeals said: “The
 
 *99
 
 amended petition alleges that the commission has refused arbitrarily to collect the amount due on the sales made by these corporations. Whether the petitioner can come within the third syllabus of
 
 State, ex rel.,
 
 v.
 
 Miller
 
 as to the necessary proof that the commissioner has refused arbitrarily to collect the amount due on
 
 a specific taxable sale or sales,
 
 remains to be determined after the evidence has been disclosed.” The words “a specific taxable sale or sales” were underscored in the original decision of the Court of Appeals.
 

 Had the Court of Appeals adhered to, its view of the law as apparently expressed in the foregoing decision, the judgment of that court necessarily would have been for appellant here and no peremptory writ of mandamus would have been allowed for the simple reason that the special master commissioner did not find and the record did not disclose a single specific taxable sale or sales upon which the Tax Commissioner had refused arbitrarily or otherwise to collect the amount due. In passing upon the second amended petition, upon which this case was heard, the Court of Appeals was apparently accepting the third paragraph of the syllabus of
 
 State, ex rel. Foster,
 
 v.
 
 Miller et al., Tax.Comm.,
 
 136 Ohio St., 295, at face value.
 

 However, in its final opinion in this case the Court of Appeals said in respect of that case: “As to the third syllabus there arises the question if it was responsive to any proposition of law presented to the court by the pleadings and the facts, but after having given the matter close scrutiny we are of the opinion that in using the term ‘specific taxable sale or sales,’ the court did not intend to say that it was necessary to prove ‘individual’ sales. There is a distinction in the two terms which should be applied in the determination of this particular issue.”
 

 As to the first part of the foregoing quotation we have already pointed out that this same relator had
 
 *100
 
 sought a writ of mandamus against the members of the Tax Commission to compel them to discharge their duties under the same sales tax law with respect to the same sales made by A. & P. and Kroger for the years 1935 and 1936.
 

 As to the latter part of the foregoing quotation, we simply call attention to the fact that that paragraph dealt with
 
 a
 
 specific taxable sale or sales. We are of the opinion that the language used in the third paragraph of the syllabus referred to means the same as if instead of the word “specific” the word “individual” had been used.
 

 The report of the special master commissioner, which was confirmed by the Court of Appeals, was based upon the following premise of the master:
 

 ‘ ‘ The opinion of the Tax Commissioner, as expressed in his testimony in the hearing on this case, that he had no power and that the Tax Commission in 1936 had no power to' apply the weighted percentage rate upon an accurate audit is so clearly unsound, that a refusal on his part to give notices of assessment based upon that theory of law, must be held to be arbitrary and an abuse of his discretion.”
 

 The special master commissioner reached his -conclusion as to the authority of the commission and com-; missioner to adopt or use a “weighted average percentage” by the application of the doctrine of implied powers announced in the case of
 
 McCullouch
 
 v.
 
 Mary
 
 land, 17 U. S. (4 Wheat.), 316, 4 L. Ed., 579.
 

 There is no analogy between the powers of the Congress, or any other legislative body, to enact laws and those of an administrative commission which possesses no law-making power. The Federal Constitution contains a delegation of powers to legislate while the Sales Tax Act in question contains a. delegation of authority to administer what has been enacted by the General Assembly. Under its rule-making powers (Section 5)
 
 *101
 
 the commission liad the power to adopt and promulgate such rules and regulations as it might deem necessary to
 
 carry out the provisions
 
 of the act.. It should need no citation of authority, in this state at least, to demonstrate that, boards and commissions have no lawmaking power and that under our Constitution no such powers may be delegated.
 

 The special master commissioner and the Court of Appeals, in confirming his report, have held in substance that where the General Assembly has omitted a provision to successfully carry out what the courts may think to be the- spirit of the law the administrative body may and should supply that deficiency. We do not subscribe to such view. See
 
 Davis et al., Comm.,
 
 v.
 
 State, ex rel. Kennedy, Dir.,
 
 127 Ohio St., 261, 187 N. E., 867;
 
 Matz, Admr.,
 
 v.
 
 J. L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 7 N. E. (2d), 220.
 

 As was said by Chief Justice Marshall in the case of
 
 Cassidy
 
 v.
 
 Ellerhorst,
 
 110 Ohio St., 535, 539, 144 N. E., 252, 42 A. L. R., 372:
 

 “In approaching the interpretation of statutes imposing taxes, it should be recognized at the outset that the rule of strict construction should be followed, and that, where there is ambiguity or doubt as to legislative intent, the doubt should be resolved in favor of the person upon whom the burden of taxation is sought to be imposed, and that language employed in a taxation statute should not be extended by implication beyond its clear import, or to enlarge its operation so as to embrace subjects of taxation not specifically named. This rule has been declared by this court in
 
 Gray
 
 v.
 
 City of Toledo,
 
 80 Ohio St., 445, 448, 89 N. E., 12, and
 
 City of Cincinnati
 
 v.
 
 Connor,
 
 55 Ohio St., 82, 91, 44 N. E., 582; and by the Supreme Court of the United States in
 
 Gould
 
 v.
 
 Gould,
 
 245 U. S., 151, 38 S. Ct., 53, 62 L. Ed., 211.”
 

 Belator puts much emphasis on the fact that a per
 
 *102
 
 sonal liability is provided under Section 9a of the act for retail sales
 
 admittedly
 
 made by a vendor. The record does not disclose the making of any taxable retail sale and certainly none was admitted. The label “personal liability” is merely a polite term for “penalty.” Statutes imposing penalties are to be strictly construed. 19 Ohio Jurisprudence, 216, Section 19. Besides, before a liability for the penalty may be established, proof of a taxable sale or sales must be adduced. ' This is clear from the opening sentence of Section 9a, which reads: “In case any vendor fails to collect the tax herein imposed, or having collected the tax, fails to cancel the prepaid tax receipts in the manner prescribed by this act and by the regulations of the commission, he shall be personally liable for such amount as he failed to collect, or for the amount of the prepaid tax receipts which he failed to cancel. ’ ’
 

 Administrative rules may facilitate the operation of what has been enacted by the General Assembly but may not add to or subtract from the legislative enactment. It was within the power of the Tax Commission to have prescribed the procedure or method whereby vendors were to make records of or keep track of all sales classified as- to the respective tax brackets. This the commission did not-do for the reason that such records were impracticable. The commission did prescribe forms of audits and provided for assessments against the vendor according to weighted average rates. So far as the auditing was concerned that was clearly within the powers of the commission but we find no justification in the law for making assessments against vendors according to a flat rate, a weighted average percentage or any mathematical probabilities.
 

 As stated in 37 Ohio Jurisprudence, 378, Section 106:
 

 “The term ‘amendment’ implies such addition to or change within the lines of the original instrument
 
 *103
 
 as will effect an improvement or better carry out the purpose for which it was framed. ’ ’ See, also, 50 American Jurisprudence, 16.
 

 We are not here concerned with later amendments, save as they tend to show omissions in or a change from the original act. On December 13, 1935, the 91st General Assembly amended the original Sales Tax Act by the adoption,
 
 inter alia,
 
 of Section 5546-12a, General Code (116 Ohio Laws, pt. 2, 77), which provided as follows:
 

 “When an examination and audit of the vendor’s books and records, by the commission and its agents, discloses no separate records of the tax collected from the consumers and the amount of such collections, or that the aggregate collection from consumers is less than three per centum of the vendor’s sales, it shall be conclusively presumed that the vendor has failed to collect the tax from the consumer and in such cases the commission shall make a finding and assessment of the amount of tax, plus a penalty of fifteen per centum of the amount thereof, which the vendor should have collected and proceed forthwith to collect the same. Failure of the vendor to pay such assessment and penalty within ten days after the certification thereof shall result in the automatic revocation of the vendor’s license and such revocation shall prohibit the vendor from engaging in the business of selling tangible personal property in this state. * # *”
 

 The foregoing enactment was later amended (December 22, 1936, 116 Ohio Laws, pt. 2, 333) and thereafter Section 5546-12a, General Code, provided:
 

 “In addition to the tax levied in Section 5546-2 of the General Code * * * there is hereby levied upon the privilege of engaging in the business of making retail sales, an excise tax of threé per centum of the receipts derived from all such retail sales, excepting those to which the excise tax imposed by Section 5546-2 of the
 
 *104
 
 General Code is made inapplicable by subparagraphs 1 to 12, inclusive, of said section. The tax imposed by this section shall be determined by deducting from the sum representing three per centum of the receipts from such retail sales the amount of tax paid to the state by means of cancelling prepaid tax receipts in accordance with the provisions of Section 5546-3 of the General Code. This section shall not be so construed or' applied as to affect any duty of the vendor under Sections 5546-1 to 5546-17, both inclusive, of the General Code, nor the liability of any consumer to pay any tax imposed by Section 5546-2 of the General Code.”
 

 Section 5546-12a, General Code, as last above quot-’ ed, became effective January 1, 1937. Had it been in effect during the year 1935 it would have required a different conclusion than is necessary here. Our question here pertains only to sales made during the year 1935.
 

 It is reasonable to assume that Section 5546-12<z, General Code, was adopted and amended in an attempt to take care of just such situations as were disclosed by the Tax Commission’s audits.
 

 Where statutes are ambiguous there is room for judicial interpretation but where instead of an ambiguity there is an absence of enactment, courts are without power to supply the deficiency. It has been held, too often to need any citation of authority, that in seeking legislative intention courts are to be guided by what the legislative body said rather than what we think they ought to have said.
 

 In the case of
 
 State, ex rel. Methodist Children’s Home Association,
 
 v.
 
 Board of Education of Worthington Village School Dist.,
 
 105 Ohio St., 438, 138 N. E., 865, at page 449 Judge Matthias said: “No decisions are more harmful in their ultimate effects than those wherein the courts attempt, by statutory interpretation, or rather by statutory construction, to provide
 
 *105
 
 for a particular situation in a manner believed to be popularly desired, and such unwarranted usurpation of tbe legislative power merits tbe condemnation usually accorded it after full and candid consideration and upon deliberate and mature judgment.”
 

 We also agree with the statement of Chief Justice Marshall in his dissenting opinion in that case at page 465 wherein he said: “The key to judicial interpretation is the legislative intent * # V’
 

 Where the General Assembly has omitted a provision in an act necessary to make it complete or otherwise advisable, the courts have no power to supply what the court thinks the legislature ought to have enacted.
 

 In the case of
 
 Slingluff
 
 v.
 
 Weaver,
 
 66 Ohio St., 621, 64 N. E., 574, this court held:
 

 “* *
 
 * The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what is has plainly expressed, and hence iio room is left for construction.”
 

 See, also, 37 Ohio Jurisprudence, 488, 490 and 514 and
 
 Sears
 
 v.
 
 Weimer,
 
 143 Ohio St., 312.
 

 As stated in 37 Ohio Jurisprudence, 492, Section 269 :
 

 “It is not the function of a court to set forth what it thinks the statute under consideration should provide or to give to a statute an operation which the legislature does not intend. The statute may not, under the guise of interpretation, be modified, altered, amended, set aside, disregarded, crippled, nullified, or repealed. There is no authority, under any rule of statutory construction, to add to, enlarge, supply, expand, extend, or improve the provisions of the statute to meet a situation not provided for, or contemplated, thereby, or to substitute other provisions therefor. * * # Nothing may be read into, or out of, the statute which is not within ,the manifest intention of the legislature as gathered from the act itself.”
 

 
 *106
 
 It must be kept in mind that neither the A. & P. nor Kroger was authorized to proceed under Section 5 of the act whereby the Tax Commission' had the authority to authorize a vendor to prepay the tax levied and waive the collection of the tax from the consumer in the manner otherwise provided- in the act. What we are dealing with here is the liability of a vendor for the collection of a tax levied against the consumer with a presumption that all sales by the vendor are subject to the bracket tax levied until the contrary is established. The same section in which this provision for presumption is contained (Section 2) is the tax levying section and contains twelve categories of exempt sales. Under the law none of these exempt sales could be presumed to be subject to the tax levied for in specific language the section provides: “The tax hereby levied does not apply to the following-sales.” Therefore, there is no basis for making- an assessment based upon gross or net receipts against either A. & P. or Kroger
 
 under the km in effect in 1935.
 

 It was in an effort to correct this apparent loophole in the law that the succeeding G-eneral Assembly enacted Section 12a,
 
 supra,
 
 which at first provided that when an examination and audit of the vendor’s books and records by the commission and its agents disclosed no separate records of the tax collected from consumers and the aggregate collection from consumers was less than three per cent of vendor’s sales it should be conclusively presumed that the vendor had failed to collect the tax from the consumer and in such case the commission was authorized to make a finding and assessment directly against the vendor.
 

 It is true that in the ST 10 reports there are reports of exempt sales which are summarized in the recapitulation of the auditor’s sheets. The evidence disclosed that the Kroger attorney disputed the amount of exempt sales as determined by the audit.
 

 
 *107
 
 While the discrepancy between the net sales (gross sales less allowed exempt sales) and the amounts of prepaid tax receipts cancelled may be striking, yet there is nothing in this record which discloses in which brackets or below any bracket («.
 
 e.,
 
 below nine cents) the sales, if taxable, fell. In order that the taxing officials might have had any ground upon which to proceed, it would have been necessary to classify the vendor’s sales according to the different brackets and exemptions. Here then would be some basis upon which the presumption of taxability might apply. The record here shows and the special master commissioner found that the A. & P. cancelled stamps in approximately 2.47 per cent of claimed taxable sales while Kroger cancelled approximately 2.50 per cent of claimed taxable sales. There is no evidence in the record showing whether there were any other vendors whose sales were comparable. There is no evidence comparing A. & P. stores with Kroger stores in the same localities. The record contains no evidence that either A. & P. or Kroger failed to comply with Section 3 of the act.
 

 The record in this case is to be tested by the provisions of Section
 
 9a
 
 of the Sales Tax Act in. effect in 1935. This section is set out in full in the foregoing statement of facts. The part here material is as follows :
 

 “In case any vendor fails to collect the tax herein imposed, or having collected the tax, fails to cancel the prepaid tax receipts in the manner prescribed by this act and by the regulations of the commission, he shall be personally liable for such amount as he failed to collect, or for the amount of the prepaid tax receipts which he failed to cancel.
 

 “In such case the commission shall have power to make an assessment against such vendor based upon
 
 *108
 
 any information within its possession or that shall come into its possession. * * *”
 

 As there is no evidence that either the A. & P. or Kroger collected any tax for which either failed to cancel the prepaid tax receipts in the manner prescribed by the act and the regulations of the commission, we are confronted with the question of whether there is any information within the possession of the Tax Commissioner showing that either of the vendors failed to collect the tax imposed by Section 2 of the act. The ST 10 forms as well as the audits made by the Tax Commission disclose gross sales less returns and the balance of net sales. They also disclose the net amount of prepaid tax receipts cancelled. Our question is, does this information disclose any sales of nine cents but of not more than forty cents on which one cent tax should have been collected; or does it disclose any sales of more than forty cents and not more than seventy cents on which two cents tax should have been collected; or does it disclose any sales of more than seventy cents but not more than one dollar on which three cents tax should have been collected; or does it disclose any sales in excess of one dollar upon which the prescribed tax was not collected.
 

 The court below has held that the liability of vendors under Section
 
 9a
 
 of the act may be proved by the application to the net sales, as determined by the commission’s audits, of the average percentage of tax collectible from taxable retail sales in the business in which the two specific vendors are engaged, and/or by thé. mathematical probabilities demonstrated by the bracket taxes set out in Section 5546-2, General Code, that the tax collectible on the taxable retail sales made by the vendors could not be less than three per cent. The so-called average percentage of tax collectible referred to by the court below is based upon unverified data which the evidence clearly shows to be unreliable.
 
 *109
 
 There is no evidence that any spot-checks were made in any of the stores of either A. & P. or Kroger. The testimony showed that while the records of these concerns were very complete and adequate to cover the matters required by the regulations of the Tax Commission under Section 12 of the act, like other grocery stores such records were not broken down as to individual sales so that the tax due upon the respective specific sales could be shown. It was shown by the witnesses who testified on the subject that it was not practical for such concerns as A. & P. and Kroger to keep a record of each taxable retail sale. Whatever may be said about the possibility or practicability of such merchants making and keeping records of each small sale or the possibility or practicability of auditing such records, the matter must be dismissed for the reason recognized but not followed by the special master commissioner and the court below,
 
 i. e.,
 
 neither the law nor the regulations of the commission required the keeping of such records.’
 

 We have read every word of the record and have been unable to find evidence of a single taxable sale having been made by either A. & P. or Kroger in which the proper amount of sales tax receipts were not can-celled. In appellee’s brief it is said: “We freely concede that no evidence was offered of any individual sale or sales.”
 

 As there is no evidence of any information in the hands of appellant or his predecessor outside of the ST 10 reports and the audits showing total sales, our question is narrowed to whether under the Sales Tax Law in effect in 1935 (115 Ohio Laws, pt. 2, 306
 
 et seq.),
 
 the Tax Commissioner may be compelled by mandamus to base an assessment against either or both A.
 
 &
 
 P. or Kroger upon “the average percentage of tax collectible from taxable retail sales, in the business in which two specific vendors herein described are en
 
 *110
 
 gaged,” or “the mathematical probabilities demonstrated by the bracket tax rates set out in G. C. 5546-2, that the tax collectible on taxable retail sales made by the vendors could not be less than
 
 3%.”
 
 To each of the alternatives in the foregoing question, the answer is clearly no.
 

 We are of the opinion that the record discloses no information in the possession of the Tax Commissioner upon which an assessment may be made against either A. & P. or Kroger. The special master commissioner’s finding of law No. 4 should not have been confirmed even as modified. Therefore, the judgment of the Court of Appeals should be and hereby is reversed and the cause dismissed at relator’s costs.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias and Bell, JJ., concur.
 

 Zimmerman and Williams, JJ., dissent.
 

 Hart, J., not participating.