FRANK D. CELEBREZZE, JR., J.:
*264 {¶ 1} Appellant, U.S. Specialty Insurance Co. ("Specialty"), appeals from an order of the common pleas court directing it to return 80 percent of the bond premium paid by a criminal defendant or his mother to secure his release pending trial. Specialty argues that the court has no authority to order the refund of a bond premium because such an order would require Specialty to violate state law. After a thorough review of the record and law, this court reverses and remands, albeit for different reasons.
I. Factual and Procedural History
{¶ 2} Crayshaun L. Bates was arraigned on February 19, 2016, and a $500,000 bond was set in Cleveland Heights Municipal Court. The case was transferred to Cuyahoga County Common Pleas Court, where bond was set at $150,000 with home detention and GPS monitoring. On February 26, 2016, Specialty, through its agent Charles C. Brown, II, agreed to act as surety for Bates, and posted the required bond. On July 13, 2016, the court entered a notice that Bates disabled his GPS monitor and could not be located. The court issued a capias warrant for Bates. On August 8, 2016, the court continued bond with modification for work privileges, and ordered Bates to pay for repairs for the GPS monitor he damaged. On August 16, 2016, Bates failed to appear and the court issued an order stating that the recognizance previously taken was forfeited and set a hearing for Specialty to appear with Bates or show good cause why judgment should not be rendered against it. Bates then filed a motion seeking the reinstatement of bond and the vacation of the earlier bond forfeiture order. Specialty also filed a motion to vacate bond forfeiture because Bates had been located, but it also requested that it be relieved of liability and discharged as the surety. Attached to the motion was the surety bond contract with the court and other court records regarding Bates's bond and his failure to abide by the terms of his release. The court vacated the bond forfeiture, reinstated bond, and set a hearing on Specialty's motion for relief from liability and discharge.
{¶ 3} A hearing began on Specialty's motion on September 12, 2016. On September 19, 2016, the court ordered that Specialty be released from liability, but it also ordered Specialty to refund 80 percent of the premium paid. Specialty sought reconsideration and the court held another hearing via phone conference that resulted in the issuance of the following order:
Nunc pro tunc entry as of and for 09/28/2016. Hearing was held on September 28, 2016, as a result of the motion of the surety, Charles Brown, to reconsider the order of this court relieving the bonding company of the duty to continue the bond for Crayshaun Bates and requiring the bonding company to return 80% of the premium paid so far by the defendant or his representatives. The surety argues that to make such an order would violate the law and that Mr. *265 Bates should not receive any rebate due to violations of the conditions of the bond. Counsel for Mr. Bates argued that the court had already made its decision with the surety represented in an open court hearing, that the surety had not suffered any loss as a result of the defendant's actions of removing his GPS bracelet and did not have any adverse consequences. The court has reviewed the relevant statutes, R.C. 3905.01, et seq., and does not find any prohibition for the court to order the return of premium. There are prohibitions against the surety taking such action on its own, especially for purposes of gaining an unfair advantage over other sureties, such as offering a discount or return of a portion of the premium. This situation is different. The court granted the surety's request to be relieved from the bond and since that responsibility has been released, it is only fair and equitable that the defendant receive back a portion of the premium since the surety is not being required to complete its contractual duties and only had the bond in place for a relatively short period of time with no adverse consequences. The court confirms its prior order finding that the surety is released from this bond and is required to return 80% of whatever portion of the premium was paid by October 5, 2016, unless there is an appeal and appeal bond filed on or before that date.
{¶ 4} Specialty then filed the instant appeal assigning one error for review:
I. The trial court erred by ordering appellant to refund a portion of the surety bond premium in violation of state law.
II. Law and Analysis
{¶ 5} A bail bond agreement is a contract between a surety and a court whereby the surety guarantees that a principal will appear for the duration of the court proceedings. State v. Am. Bail Bond Agency , 129 Ohio App.3d 708, 712, 719 N.E.2d 13 (10th Dist.1998). A surety bond is a contract of insurance and is governed by contract principles. A trial court's interpretation of a contract is reviewed de novo, or without deference to the trial court's determination. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm , 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). Generally, the contract is the source of rights and responsibilities between the parties. Here, the contract in the record is between the surety and the court. However, the agreement between the surety and the party paying the bond premium, Bates or his mother, is not in the record. Therefore, this court will proceed on principles of statutory interpretation, because that offers an appropriate means of arriving at a resolution in this case.
{¶ 6} Bail bonding agents are regulated by R.C. 3905.01 et seq., Crim.R. 45, and portions of the Ohio Administrative Code. R.C. 3905.932 provides a list of things a surety may not do, including providing a discount or rebate that would bring the price of its services below that submitted to and approved by the Ohio Superintendent of Insurance. R.C. 3905.932(F). See also R.C. 3905.14(B)(33). Specialty argues that the trial court's order would force it to pay an illegal rebate to Bates or his mother. Matters of statutory interpretation are also reviewed de novo. State v. Consilio , 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8. However, as pointed out by the state of Ohio in an amicus brief filed in this case, the trial court does not have authority to order such a refund under these circumstances, whether it constitutes an illegal rebate or not.
{¶ 7} Ohio law provides a surety with a mechanism for requesting that a court remit all or a portion of a forfeited recognizance *266 under the contract for bond. R.C. 2937.39 states,
After judgment has been rendered against surety or after securities sold or cash bail applied, the court or magistrate, on the appearance, surrender, or rearrest of the accused on the charge, may remit all or such portion of the penalty as it deems just and in the case of previous application and transfer of cash or proceeds, the magistrate or clerk may deduct an amount equal to the amount so transferred from subsequent payments to the agencies receiving such proceeds of forfeiture until the amount is recouped for the benefit of the person or persons entitled thereto under order or remission.
{¶ 8} Further, R.C. 2937.40 provides for the release of a surety in the following three ways:
(1) When a surety on a recognizance or the depositor of cash or securities as bail for an accused desires to surrender the accused before the appearance date, the surety is discharged from further responsibility or the deposit is redeemed in either of the following ways:
(a) By delivery of the accused into open court;
(b) When, on the written request of the surety or depositor, the clerk of the court to which recognizance is returnable or in which deposit is made issues to the sheriff a warrant for the arrest of the accused and the sheriff indicates on the return that he holds the accused in his jail.
(2) By appearance of the accused in accordance with the terms of the recognizance or deposit and the entry of judgment by the court or magistrate;
(3) By payment into court, after default, of the sum fixed in the recognizance or the sum fixed in the order of forfeiture, if it is less.
{¶ 9} Neither provision gives a court the ability to order the refund of a portion of the bond premium. "There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for." State ex rel. Foster v. Evatt, 144 Ohio St. 65, 56 N.E.2d 265 (1944), paragraph eight of the syllabus. If Specialty has breached a contract between it and Bates or his mother related to the contract for the provision of bail, then civil remedies exist outside those available in the confines of a criminal case.
{¶ 10} Other states have similar statutes that do give a trial court the ability to refund a portion of the bond premium. For instance, Louisiana provides for the surrender of a defendant by a surety and the payment of a refund of the bond premium where the defendant has not violated a court order or failed to appear. Knauf v. Continental Bail Bonds, Inc. , 549 So.2d 905, 907 (La.App.1989). However, where the defendant has failed to appear, the surety may be entitled to retain any premium upon showing good cause. Id . at 909. The Knauf court found that the statutory scheme did not limit the rights of the parties to contract certain terms, and where the contract included terms that limited a principal's right to a refund of bond premiums and the principal violated those terms, this constituted good cause under the statute. Id .
{¶ 11} Any agreement between Specialty and Bates or his mother for the payment of a premium is not in the record before this court, so contract theory is not helpful in this case. Had Specialty supplied that contract to the lower court and made it a part of the record, this court would be bound to also apply contract principles to *267 the analysis. It did not do so, and therefore this court cannot.
{¶ 12} The Knauf court also analyzed other state statutes and determined that Texas and Colorado have similar statutes regarding the refund of bond premiums where a surety surrenders a defendant before the conclusion of the case. Id . at 908. For instance, Tex.Occ. Code Ann. 1704.207 provides discretion to the court to craft an appropriate refund on surrender. Seneca Ins. Co. v. Ross , 507 S.W.3d 798 (Tex.Civ.App.2015).
{¶ 13} The Knauf court also cited to a treatise to support its decision:
"Although the surety may have the legal right to obtain his discharge by surrendering the principal, he has no such right as between himself and the principal, and the surety's surrender of the principal will not release him from his agreement to remain bail until the case is called for trial, or according to the terms of the bond. Accordingly, in the event of an unwarranted surrender the principal may recover the amount of the premium paid. If there is an agreement that the sureties will not exercise their lawful right to surrender the principal, there is implied, if not otherwise expressed, the duty of the principal so to conduct himself as not to cause reasonable apprehension on the part of the sureties as to whether he will answer the charge as required by law, and will not violate his duty to the sureties to be subject to their control. The determination as to whether the agreement was breached by such surrender depends on whether the contract authorized such surrender, or if not, whether the subsequent conduct of the principal was such as justified a surrender. Where the surrender is authorized or the surety has not breached his duty, premiums paid for the bail may not be recovered."
Knauf , 549 So.2d at 909, quoting 8 Corpus Juris Secundum, Bail, Section 138, at 166 (1988).
{¶ 14} Arkansas also has a statute governing the surrender of a defendant by a surety and distinguishes when the surety may keep the bond premium depending on whether the surrender was with or without cause. Johnson v. Hicks , 288 Ark. 158, 702 S.W.2d 797 (1986). California has the same rule. People v. Smith , 182 Cal.App.3d 1212, 228 Cal.Rptr. 277 (1986). Tennessee allows the trial court a degree of discretion to craft an appropriate refund of a bond premium when the surety is relieved of its obligations prior to the end of trial. Carver v. Rader , 531 S.W.2d 114 (Tenn.App.1975). However, a refund is not appropriate where a defendant is arrested on other charges while out on bail. State v. Jones , 743 S.W.2d 942 (Tenn.Crim.App.1987), citing Tenn.Code Ann. 40-11-315(a). Strictly on contract principles, Missouri appears to allow the retention of the entire bond premium once bond is posted. Laas v. Wright , 191 S.W.3d 93 (Mo.App.2006).
{¶ 15} Many of the aforementioned states have statutes similar to Ohio regarding the release of a surety on the happening of certain conditions, but have additional language indicating whether a refund of any portion of the bond premium is allowed. See, e.g., Colo.Rev.Stat. 16-4-110(1)(d) ("If a compensated surety is exonerated by surrendering a defendant prior to the initial appearance date fixed in the bond, the court, after a hearing, may require the surety to refund part or all of the bond premium paid by the defendant if necessary to prevent unjust enrichment."). Ohio does not have similar language dealing with the refund of a bond premium upon release of a surety before the end of proceedings.
{¶ 16} The statutory scheme in South Carolina is perhaps most enlightening as *268 illustrated in Ex parte Bonds , 358 S.C. 652, 596 S.E.2d 378 (S.C.App.2004). There, the court was confronted with a similar situation to the one presented here. A surety was relieved of its obligations prior to resolution of the case and the trial court ordered the return of a portion of the bond premium and the surety appealed. Id . at 654, 596 S.E.2d 378. The appellate court ruled that the trial court did not have statutory authority to order a refund of the bond premium. Id . at 655, 596 S.E.2d 378. The court went over the prior version of the statute, which contained a provision allowing for discretion in the return of a portion of the bond premium where a surety was released before final resolution, and the then current version where this provision was removed. Id . at 654, 596 S.E.2d 378. The appellate court found this led to a lack of authority for the court to order a refund of a portion of the premium when the surety was released from liability. Id . at 655, 596 S.E.2d 378.
{¶ 17} These other jurisdictions are helpful in fleshing out the authority that a trial court possesses in this area under Ohio law. The Ohio statute permitting a trial court to release the surety of liability prior to resolution of a case does not contain any statement about the ability of the court to order a refund of any portion of the premium. R.C. 2937.39 only allows the court discretion to refund a portion of a forfeited bond. It does not speak to authority to refund a portion of a bond premium that is governed by a separate agreement between the defendant and the surety, and to which the trial court is not a party. "There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for." State ex rel. Foster , 144 Ohio St. 65, 56 N.E.2d 265, at paragraph eight of the syllabus. As set forth above, other states do have language in their statutes that provide trial courts with this discretion. Ohio does not. Therefore, the trial court was without authority to order a refund of the bond premium in this case. This holding means this court is not required to address Specialty's argument that R.C. 3905.932(F) prohibits it from paying a refund.[1] Ohio statutes do not give the court discretion to determine an appropriate refund of a bond premium in this situation. Therefore, the trial court erred in ordering the return of a portion of the bond premium.
III. Conclusion
{¶ 18} Contract principles generally govern the rights of parties to an insurance contract, but the contract in the record did not set forth the terms regarding the payment of a premium. The agreement between Bates or his mother and Specialty for the payment of a premium was not put into the record in this case, and that agreement is not before this court. However, as a matter of statutory interpretation, the court's order was improper. The trial court was without statutory authority to order a refund of a bond premium. Specialty's assignment of error is sustained.
{¶ 19} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
EILEEN T. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS WITH SEPARATE OPINION

This court does note that South Carolina had very similar statutory language prohibiting the payment of a rebate, former and current S.C.Code Ann. 38-53-170, at the same time it gave a trial court discretion to give a refund of a bond premium when a surety was relieved from liability under former S.C.Code Ann. 38-53-50. This would indicate that, at least in South Carolina, the two are different and a prohibition against rebates does not preclude a court-ordered refund.