[Cite as *Rusin v. Buehrer*, 2017-Ohio-8411.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARK RUSIN, | : | APPEAL NO. C-160772 |
| | | TRIAL NO. A-1403977 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| STEPHEN BUEHRER, | : | |
| ADMINISTRATOR, OHIO BUREAU | | |
| OF WORKERS' COMPENSATION, | : | |
| and | : | |
| CITY OF CINCINNATI, | : | |
| Defendant-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 3, 2017

*Fox & Fox Co., L.P.A.*, *Bernard C. Fox* and *M. Christopher Kneflin*, for Plaintiff-Appellant,

*Dianna K. Bond*, Assistant Ohio Attorney General, for Defendant-Appellee Stephen Buehrer,

*Paula Boggs Muething*, City Solicitor, and *William C. Hicks*, Senior Assistant City Solicitor, for Defendant-Appellee City of Cincinnati.

**ZAYAS, Presiding Judge.**

{¶1}    Plaintiff-appellant Mark Rusin appeals the trial court's judgment denying him the right to participate in the Ohio workers' compensation fund. Because we conclude that there was no error in the trial court's decision, we affirm its judgment.

### Background

{¶2}    Rusin was a Cincinnati firefighter for over 25 years. He responded to hundreds of fires, and was exposed to smoke containing toxic materials such as heavy metals and organophosphates.  In 2005, he began to experience joint pain, weakness, spasms, and difficulty coordinating his movements.  He was eventually diagnosed with amyotrophic lateral sclerosis ("ALS").  His initial prognosis gave him two to five years to live, the typical life expectancy for someone with ALS.  However, about ten percent of ALS patients survive longer than five years, and Rusin, who is still alive, is in this group.  The Ohio Police and Fire Board ("OP&F") found that Rusin's ALS was duty-related and granted him a disability retirement.

{¶3}    In 2009, Rusin consulted with Dr. Joseph Hickey, a board-certified internal medicine physician in Hilton Head, South Carolina.  Hickey has no training in neurology.  Nonetheless, since 2003, Dr. Hickey has taken an interest in the health effects of heavy-metal exposures, and has treated many patients who have neurological disorders.  Hickey tested Rusin's heavy-metal levels and found them to be higher than normal.   He recommended that Rusin undergo "chelation" treatments, where a negatively-charged protein is injected into the patient that attracts the positively-charged heavy metals out of the patient's bones and organs and into the patient's excretory systems.  Rusin underwent a total of 50 chelation treatments, which he and Hickey believe have helped slow the progress of his ALS.

{¶4} Rusin filed a workers' compensation claim in 2012 that was ultimately denied. He appealed to the Hamilton County Court of Common Pleas, which held a bench trial. The trial court heard testimony from Rusin, Hickey, and the city's expert witness, Dr. Kenneth A. Mankowski.

{¶5} Hickey testified that ALS is a motor-neuron disease, and that the motor neurons are the cells in the brain and spinal cord that stimulate muscles. Heavy metals and organophosphates are toxic substances that destroy motor neurons. Being around smoke exposes people to these substances, because they are present in various materials and are vaporized when those materials are burned. Hickey testified that firefighters are therefore more susceptible to neurological diseases than those in other occupations. He further testified that exposure to heavy metals will cause the metals to build up in the body, and that over time this exposure can cause motor-neuron diseases like ALS. Hickey believes that chelation helps to remove the buildup of heavy metals, but acknowledged that chelation is not within the standard of care for ALS, and that he uses the treatment "off-label." Hickey formed his opinions through his own research reading medical journals, and he acknowledged that his opinions are not shared by the vast majority of the medical establishment.

{¶6} Hickey has not conducted or published any studies on heavy metals and ALS. He acknowledged that the "vast majority" of those diagnosed with ALS "have no study that can relate heavy metal levels within them and their disease," and that there is no study showing what level of any toxic substance would cause ALS. He also acknowledged that an "absolute connection with exposure and then an incident of" ALS has not been established. Ultimately, he testified to a reasonable

degree of medical certainty that Rusin's ALS was caused by his exposure to heavy metals and other toxic substances during his work as a firefighter.

{¶7}    Mankowski testified that he was a board-certified neurologist who completed a fellowship diagnosing and treating ALS patients, and that he sees several ALS patients a year.  Mankowski characterized ALS as a rare disease.  He had not personally examined Rusin, but conducted a review of his file at the city's request.  He testified that the theory Hickey promoted regarding heavy metals and ALS is not in the mainstream: "[T]here's no data or any knowledge that gives you great understanding of what, if any, role heavy metal would play in ALS."  He agreed with Dr. Hickey that 90-95 percent of ALS cases have no known cause, and that in the other five to ten percent, "we think there's a genetic connection or link. * * * Anything beyond that * * * it's purely theoretical."  He testified that chelation is not a standard treatment for ALS because there is no conclusive body of evidence that establishes a link between metal toxicity and motor-neuron damage, and that he had never recommended the treatment for ALS patients.  Mankowski found that "there's no evidence to conclude that heavy metals had anything to do with Mr. Rusin's ALS."

{¶8}    While acknowledging that firefighters were at a greater risk for a variety of health problems, Mankowski does not "automatically test [firefighters] for heavy metals because of the risk of exposure."  He testified that there is no way to know whether the chelation treatments were the sole cause of any reduction in Rusin's levels of heavy metals, and noted that chelation does nothing to treat exposure to organophosphates.  He found no data to suggest that chelation altered the course of Rusin's life, and that if there were data showing that chelation gives ALS patients an increased chance of survival, it would be a standard treatment.

{¶9}     He testified that "it is absolutely not thought of in mainstream neurology amongst the experts in [ALS] that heavy metal poisoning or heavy metal toxicity is commonly a contributing factor to ALS."  Mankowski was aware of very rare cases where it was theorized that "extremely high" levels of heavy-metal toxicity over a prolonged period of time can cause or contribute to ALS, and that this was mostly in individuals who are genetically susceptible to ALS.  However, he noted that there was no evidence that Rusin is genetically susceptible to ALS, and thus, it did not appear that Rusin fit into that very small percentage of individuals.  Mankowski also testified that from reviewing Rusin's medical records he has concluded that Rusin's metal levels were not at the level that Hickey typically sees when Hickey has concluded that motor-neuron damage resulted from exposure to heavy metals.

{¶10}     After considering the testimony and exhibits, the trial court issued a decision concluding that, "[a]lthough firefighters are disproportionately exposed to heavy metals as Dr. Mankowski concedes, there is no medical consensus that environmental factors are a risk for developing ALS.  All studies conclude that more research is needed.  The analytical gap unfortunately is just too great between the epidemiological studies and data and Dr. Hickey's causation opinions."  Two months later, the trial court issued a final judgment entry.  Rusin timely appealed.

### Assignments of Error

{¶11}     Rusin asserts three assignments of error.  The first is that the trial court's holding regarding causation was unsupported by the evidence.  The second is that the trial court failed to utilize the presumption under R.C. 4123.68(W) and to comply with the requirement of R.C. 4123.95.  The third is that the trial court erred in excluding the OP&F decision and the testimony of other firefighters.

## Standard of Review

{¶12}     In a workers' compensation appeal, "[t]his court reviews the decision of the trial court as to issues of fact under a manifest-weight-of-the-evidence standard, and we will not reverse the trial court's judgment if it is supported by some competent, credible evidence." *Bell v. Bur. of Workers' Comp.*, 1st Dist. Hamilton No. C-110166, 2012-Ohio-1364, ¶ 22.  In a manifest-weight review, "this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *Moore v. Admr.*, 1st Dist. Hamilton No. C-140413, 2015-Ohio-3969, ¶ 9. "As a reviewing court, we must indulge every reasonable presumption in favor of the trial court's judgment." *Bell* at ¶ 31.

## Workers' Compensation

{¶13}     R.C. 4123.68 provides, in relevant part, that "[e]very employee who is disabled because of the contraction of an occupational disease * * * is entitled to the compensation provided" by the workers' compensation statutes.  The statute then enumerates several "scheduled" diseases that are presumed compensable.  If a disease is not "scheduled," then it is only covered if it "meets the definition of an occupational disease."  ALS is not one of the scheduled diseases enumerated in R.C. 4123.68.

{¶14}     R.C. 4123.01(F) provides a definition of "occupational disease" that the Ohio Supreme Court has restated as a three-part test:

> (1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the

6

employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally.

*State ex rel. Ohio Bell Tel. Co. v. Krise*, 42 Ohio St.2d 247, 327 N.E.2d 756 (1975), syllabus.

{¶15}    Furthermore, to present a prima facie case involving an injury caused by exposure to a toxic substance, "a claimant must establish (1) that the toxin is capable of causing the medical condition or ailment (general causation), and (2) that the toxic substance in fact caused the claimant's medical condition (specific causation)." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 15.

### The Trial Court's Judgment Was Not Against the Manifest Weight of the Evidence

{¶16}    Rusin had to prove by a preponderance of the evidence that ALS can be caused by exposure to heavy metals and/or organophosphates, that his ALS was caused by such exposure, and that the exposure occurred during the course of his employment as a firefighter.  The trial court found that he failed to meet his burden of proving causation, though it did not explicitly distinguish its findings between general and specific causation.  To the extent that the trial court held that general causation was not proven, we find that this holding was in error.  Both experts agreed that there are cases where exposure to heavy metals has likely caused ALS, so such toxins are "capable of causing the medical condition or ailment."  However, Rusin must establish general *and* specific causation, and the trial court's holding that Rusin did not prove specific causation was not against the manifest weight of the evidence.

{¶17} Dr. Mankowski testified that 90-95 percent of ALS cases have no known cause; that Rusin's case did not fit into the pattern of those extremely rare cases where heavy-metal exposure was theorized as causing or contributing to ALS; and that there was no evidence or data "to conclude that heavy metals had anything to do with Mr. Rusin's ALS." The trial court did not lose its way in giving this testimony more weight than it gave to the other evidence. While further research may ultimately vindicate Hickey's opinions, Mankowski's testimony regarding specific causation constitutes competent, credible evidence supporting the trial court's determination.

{¶18} Rusin contends that the trial court erred in three ways. His first contention is that the trial court erred in stating that Rusin's physicians did not conduct a differential diagnosis. However, the record does not contain any evidence that Rusin's doctors performed a differential diagnosis, and it is not our place to assume a fact not in evidence.

{¶19} Rusin's second contention—that the trial court erred in failing to credit the medical journal articles introduced as exhibits because they established "a causal link between exposure to heavy metals/organophosphates and the development of ALS in individuals"—is primarily relevant to the issue of general causation. The subjects of those articles are factually distinguishable from Rusin's circumstances, and therefore are of limited relevance to specific causation. One of the studies explicitly stated that its results were "based on a small number of cases and required replication in other populations." Regardless, to the extent that the articles may contain evidence as to specific causation, the trial court chose to give Mankowski's testimony more weight than these journal articles, and it cannot be said that the trial court lost its way in doing so.

{¶20}     Rusin's final contention is that the trial court's characterization of a case he cited, *Walker v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 100759, 2014-Ohio-4208, as "essentially turn[ing] on the employer's failure to object or otherwise challenge the expert's testimony," was incorrect.  However, the *Walker* court stated, "[g]iving due consideration to the parties' arguments and following a careful review of the record, we cannot say, based on the record before us—*including the aspects of [plaintiff's expert]'s testimony to which Ford raised no objection*—that the trial court abdicated its role as gatekeeper or otherwise abused its discretion in admitting [plaintiff's expert]'s testimony."  (Emphasis added.) *Id.* at ¶ 42.  The *Walker* court went on to say,

> With respect to the other issues in the case—specifically, the issues of general and specific causation—this was a classic case of a "battle of the experts." [Plaintiff's expert] offered one view on the issue of causation, and [defendant]'s experts offered the opposing view.  The credibility of the witnesses' testimony was squarely before the jury, and the jury was free to accept or reject any of this testimony.

*Id.* at ¶ 53.  Rusin does not articulate how the trial court should have applied *Walker* differently, and *Walker*'s holding supports an affirmance in this case.  In *Walker*, competing expert testimony was admitted, and the finder of fact credited one expert over the other.  The finder of fact's decision was supported by competent, credible evidence, so the Eighth Appellate District did not reverse it.  The same situation is present here, and therefore Rusin's first assignment of error must be overruled.

### *The Trial Court Did Not Err In Not Applying R.C. 4123.68(W)*

{¶21}     Rusin argues that the trial court should have applied the presumption contained in R.C. 4123.68(W), which provides, in relevant part, that "[a]ny

9

cardiovascular, pulmonary, or respiratory disease of a firefighter * * * caused or induced by the cumulative effect of * * * the inhalation of * * * toxic substances in the performance of the firefighter's * * * duty constitutes a presumption * * * that such occurred in the course of and arising out of the firefighter's * * * employment."

{¶22} Rusin argues that ALS is a "cardiovascular, pulmonary, or respiratory disease" because it usually causes death by weakening a person's muscles to the point that he or she can no longer breathe. However, both experts testified that ALS is a *neurological* disease. Sustaining this assignment of error would therefore require us to rewrite the statute, which is beyond our authority. *Doe v. Marlington Local School Dist. Bd. of Ed.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 29 ("It is our duty to apply the statute as the General Assembly has drafted it; it is not our duty to rewrite it.").

{¶23} Rusin contends that we may reach his proposed construction of the statute by applying the directive of R.C. 4123.95 that the workers' compensation statutes "shall be liberally construed in favor of employees." But " '[t]here is no authority under *any* rule of statutory construction,' " including liberal construction, " 'to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for.' " (Emphasis added.) *Vought Industries, Inc. v. Tracy*, 72 Ohio St.3d 261, 265, 648 N.E.2d 1364 (1995), quoting *State ex rel. Foster v. Evatt*, 144 Ohio St. 65, 56 N.E.2d 265, (1944), paragraph eight of the syllabus; *Dennis v. Smith*, 125 Ohio St. 120, 125, 180 N.E. 638 (1933) ("By 'liberal construction' [it] is not meant that words and phrases shall be given an unnatural meaning * * *."). This assignment of error must also be overruled.

### *The Trial Court Did Not Err When it Excluded Certain Evidence*

{¶24}    Finally, Rusin claims that the trial court erred when it excluded from evidence OP&F's decision that found Rusin's ALS to be duty-related, and the testimony of two firefighters who complained of unspecified physical problems after being exposed to the Queen City Barrel fire, a large fire that Rusin also fought.

{¶25}    The trial court's evidentiary decisions are reviewed under an abuse-of-discretion standard, *Brown v. Mabe*, 170 Ohio App.3d 13, 2007-Ohio-90, 865 N.E.2d 934, ¶ 7 (1st Dist.), and the trial court did not abuse its discretion here. Evidence must be relevant to be admissible, and even relevant evidence can be excluded if its probative value is outweighed by its potential to confuse the issues or mislead the finder of fact. Evid.R. 401-403. The issue in this case was whether Rusin's ALS was caused by exposure to toxic substances during his work as a firefighter, and neither piece of evidence was relevant to that issue. The two firefighters' unspecified illnesses do not make the cause of Rusin's ALS more or less probable. *See* Evid.R. 401. Nor does OP&F's decision make causation more or less probable, particularly when there is no evidence in the record demonstrating what legal standards OP&F applied to reach its determination. *See id.*

{¶26}    An abuse of discretion "suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of this court to substitute its judgment for that of the trial court." *Conrad v. Valentine*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9. There was nothing unreasonable, arbitrary, or unconscionable about the trial court's decision to exclude this evidence, and this assignment of error is therefore overruled.

### *Conclusion*

{¶27}    Having overruled Rusin's assignments of error, we affirm the trial court's judgment.

**Judgment affirmed.**

**MYERS** and **MILLER, JJ.,** concur.

Please note:

This court has recorded its own entry this date.