[Cite as *State v. Umstead*, 2021-Ohio-10.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109243 |
| v. | : | |
| ROBERT M. UMSTEAD, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 7, 2021

Criminal Appeal from the Cleveland Municipal Court
Case Nos. 2014 TRD 034472 and 2018 CRB 021900

*Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, Karrie Howard, Chief Prosecuting Attorney, and Karyn J. Lynn, Assistant Prosecuting Attorney, *for appellee.*

Jerome Emoff, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant, Robert Umstead ("Umstead"), appeals his conviction after a bench trial for aggravated menacing, a misdemeanor under the Cleveland Codified Ordinances in Cleveland M.C. No. 2018 CRB 021900. At the

time of his conviction, he also had a pending case, Cleveland M.C. No. 2014 TRD 034472. He was sentenced to community control sanctions on both cases. Umstead makes no assignment of error pertaining to M.C. No. 2014 TRD 034472; therefore, we affirm that case.

{¶ 2} Umstead presented five assignments of error in his appeal for M.C. No. 2018 CRB 021900. We will only address Umstead's second assignment of error because it is controlling. Umstead's second assignment of error relates to the trial court's decision to not allow Umstead's trial counsel to recross a witness. We find that this decision violates Ohio's policy promoting broad cross-examination and is an abuse of discretion. Therefore, we reverse his conviction and remand this case to the trial court for a new trial. His other assignments of error are disregarded as moot.

**Procedural History and Witness Testimony**

{¶ 3} On December 10, 2018, Umstead was charged in M.C. No. 2018 CRB 021900 with aggravated menacing in violation of Cleveland Codified Ordinances 621.06. On July 29, 2019, he was arraigned on the charge. Umstead elected to proceed with a bench trial, and on October 8, 2019, the trial court found him guilty.

{¶ 4} On October 29, 2019, the trial court held a sentencing hearing. The trial court imposed a $100 fine, 180 days in jail, with 177 days suspended and credit for 3 days served, and placed Umstead on 2 years active probation. The court further ordered Umstead to complete anger management classes and 60 hours of

community work service. The trial court extended the community control sanctions that were in place as to Umstead's pending traffic case.

{¶ 5} This case resulted from a confrontation between Umstead and Willie Palmer ("Palmer"). Palmer testified for the city of Cleveland ("the city") that the incident occurred at Shay's parking lot ("Shay's") where Cassandra Samuel ("Samuel"), Palmer's girlfriend, worked. Palmer testified that he had dropped Samuel off at Shay's on Saturday morning, December 7, 2018. He left to get Samuel something to eat, and when he returned in his truck, he noticed Umstead for the first time. Palmer knew that Umstead was Samuel's ex-boyfriend.

{¶ 6} Palmer testified that Umstead was in his car and that when Palmer got out of his truck, Umstead drove his car at him. According to Palmer, Umstead revved the engine, stopping and starting several times, before eventually stopping abruptly several feet from Palmer. Palmer admits that he was yelling at Umstead throughout, and calling him names.

{¶ 7} Umstead got out of his car and went to the trunk to grab a gun. He pointed the gun at Palmer who continued yelling; Palmer testified that he believed Umstead was going to shoot him. Umstead instead approached Palmer and hit him with the gun. The two began wrestling. The fight ended when a person yelled that the police were coming.

{¶ 8} On cross-examination, Umstead's trial counsel questioned Palmer about his memory of the incident, including a line of questioning about the actual date of the incident. Trial counsel indicated that he had a police report dated

December 4, days before Palmer stated the incident occurred. Palmer stated that he was certain the incident occurred on a Saturday so the report must be wrong.

{¶ 9} Samuel then testified. She stated that she had dated Umstead for about nine years until they broke up in late 2017. Umstead would sometimes visit his brother, a fellow employee at Shay's, but she had not seen him since approximately three months prior to the incident.

{¶ 10} The day of the incident, she stated that she and Palmer first noticed Umstead when Palmer returned to bring her food. On direct examination, she testified that Palmer got out of his vehicle and began yelling at Umstead, taunting him. Umstead did not reply, but instead drove his car towards Palmer, stopped, exited his car, opened his trunk, and retrieved a pistol. Umstead then approached Palmer and hit him with the gun. Palmer knocked the gun to the ground, where Samuel later retrieved it and gave it to Palmer.

{¶ 11} On cross-examination, Samuel testified that Umstead did not get out of his car until he was called names by Palmer. She also said that it's not unusual for Umstead to be at the lot and agreed with Umstead's trial counsel that Palmer initiated a verbal dispute.

{¶ 12} The city briefly reexamined Samuel and asked two questions. Samuel stated on redirect that Umstead was revving his engine at Palmer before exiting the vehicle and grabbing his gun.

{¶ 13} After the two questions, the court told the witness she could have a seat and the following exchange occurred between Umstead's trial counsel and the court:

DEFENSE ATTORNEY: Can I have one —

THE COURT: No. No.

DEFENSE ATTORNEY: One question.

THE COURT: No. All right?

DEFENSE ATTORNEY: I can't recross?

THE COURT: No. No means no, right?

DEFENSE ATTORNEY: I want to recross.

THE COURT: I said no.

DEFENSE ATTORNEY: Is there a reason I don't — I can't —

THE COURT: Because I don't do that in 12-B and it's my courtroom and I said no.

{¶ 14} The city rested its case. Umstead then testified in his own defense.

{¶ 15} Umstead said he was at the parking lot that morning and saw Samuel and Palmer. He said he just wanted to talk to Samuel. He stated that after Palmer returned and spotted him, Palmer pulled his truck in front of his, jumped out of his vehicle, and called him names. He said he did rev his engine but that he also felt threatened by Palmer. He said that he got out of his vehicle to go talk to Samuel and then Palmer moved his truck, blocking him in. Umstead was asked if he hit Palmer because he felt threatened. He said yes and said he never tried to shoot Palmer.

{¶ 16} On cross-examination, Umstead reiterated that Palmer blocked him in. He admitted that he hit Palmer first and that Palmer didn't make overt threats, stating that Palmer just came out of the vehicle yelling insults, and he interpreted those as threats.

{¶ 17} The trial court reviewed the aggravated menacing statute on the record and found Umstead guilty of aggravated menacing. The trial court explained its verdict, stating:

> I think if I'm going to sit and wait and go in the back of my car and get a gun and point it at somebody and then attempt to hit them. That would cause me to believe that I was going to be harmed seriously. He had no duty, no right to be on that property at that time. He certainly had a duty to retreat, if he thought that he felt threatened. You feel threatened but you're going to sit and wait; that doesn't even make sense.

{¶ 18} This appeal follows. Umstead presents five assignments of error.

**Assignments of Error**

I. The Evidence Was Insufficient To Prove That The Alleged Victim Believed Appellant Would Cause Him Serious Physical Harm.

II. The Trial Court Abused Its Discretion By Adopting A Blanket Policy Preventing Recross-Examination Resulting In A Denial Of A Fair Trial And Due Process.

III. The Trial Court Denied Appellant A Fair Trial By Prohibiting Impeachment By Prior Inconsistent Statement.

IV. Appellant Was Denied The Effective Assistance Of Counsel.

V. The Trial Court's Verdict Was against the Manifest Weight of the Evidence.

{¶ 19} As we stated previously, we will be limiting our review to Umstead's second assignment of error. We find that his argument has merit and that the trial

court did abuse its discretion by imposing a blanket ban on recross-examination. As a result, we reverse and remand consistent with this opinion and find that Umstead's other four assignments of error are moot.

**The Second Assignment of Error: Recross-Examination**

{¶ 20} Ohio takes a broad approach to cross-examination. "Evid.R. 611(B) requires trial courts to permit '[c]ross-examination * * * on all relevant matters and matters affecting credibility.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 171. Unlike the analogous Federal Rules of Evidence, Ohio does not limit the scope of cross-examination to the subject matter of direct examination. *State v. Treesh*, 90 Ohio St.3d 460, 481, 739 N.E.2d 749 (2001).

{¶ 21} Although "'trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination," courts should impose such limits "based upon concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive, marginally relevant interrogation.'" *State v. Henderson*, 8th Dist. Cuyahoga No. 106627, 2018-Ohio-3797, ¶ 18, quoting *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 41. Under no circumstances is a blanket policy prohibiting all recross-examination appropriate.

{¶ 22} The second assignment of error relates to the testimony of the state's second eyewitness, Samuel, who was then Palmer's girlfriend and Umstead's former girlfriend. After her testimony and cross-examination, the state asked her two questions on redirect. The first question on redirect was inaudible and could not be

fully transcribed for the record. The second question asked when Umstead revved the car engine.

{¶ 23} After the state's redirect examination of Samuel, Umstead's counsel indicated that he had one more question for Samuel and asked the trial court for permission to recross-examine the witness. After the trial court denied trial counsel's repeated requests to recross-examine Samuel, trial counsel asked the trial court why the request was denied. The trial court responded: "Because I don't do that in 12-B and it's my courtroom and I said no."

{¶ 24} Eyewitness testimony like Samuel's can carry great weight considering that a single credible eyewitness can sustain a conviction. *State v. Robertson*, 8th Dist. Cuyahoga No. 106279, 2018-Ohio-2934, ¶ 30 ("A factfinder may believe and convict a defendant based upon the testimony of a single eyewitness, including the victim."). The state was given the opportunity to reexamine Samuel. Umstead's counsel stated he had only one further question he wished to ask Samuel on recross-examination, which mitigates any concerns that might merit a reasonable limit on recross-examination. Nevertheless, his request to briefly recross Samuel was denied with no reason other than "I don't do that in 12-B and it's my courtroom and I said no."

{¶ 25} This statement demonstrates that the trial court had a blanket prohibition on recross-examination. The trial court abused its discretion in imposing this blanket prohibition, and Umstead was denied a fair trial as a result.

{¶ 26} We reverse Umstead's conviction as to Cleveland M.C. No. 2018 CRB 021900 and remand for a new trial. Umstead's other four assignments of error are disregarded as moot.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, A.J., CONCURS;
MICHELLE J. SHEEHAN, J., DISSENTS
WITH SEPARATE DISSENTING OPINION

MICHELLE J. SHEEHAN, J., DISSENTING:

{¶ 27} I respectfully dissent from the majority opinion and would affirm appellant Robert Umstead's conviction. In his second assignment of error, Umstead alleges that he was denied the right to due process and fair trial where the "trial court abused its discretion by adopting a blanket policy preventing recross-examination." Blanket policies that affect substantial rights are not favored under the law and should not be employed. But when a court implements a blanket policy, the appellate court reviews the application of that policy under an abuse of discretion

standard. *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474; *State v. Switzer*, 8th Dist. Cuyahoga No. 93533, 2010-Ohio-2473, ¶ 15.

{¶ 28} The record in this case does not definitively show the trial court employed a blanket prohibition on recross-examination. Of the three witnesses who testified, only Samuel was subject to redirect examination. After the brief redirect examination, appellant's counsel asked for the ability to further question her. The trial court denied the request. Trial counsel then asked two more times, without offering any reasoning for the trial court to consider. The trial court denied the request both times. Only after the fourth request did counsel ask for a reason for the trial court's decision, and the trial court responded, "Because I don't do that in 12-B and it's my courtroom and I said no." At that point, the trial court had denied counsel's request three times. When asked for a reason on the fourth request, the trial court stated, "I don't do that in 12-B" and "I said no." It is unclear if the trial court's comments referred to a refusal to give a reason for denying recross-examination or if the trial court employed a blanket policy against recross-examination.

{¶ 29} Even if the trial court employed a blanket policy, reversal of the trial is not warranted because the denial of the ability to recross-examination of Samuel did not amount to an abuse of the trial court's discretion. A trial court is vested with the authority to regulate the manner in which a trial is conducted by both R.C. 2945.03 and Evid.R. 611. In determining whether the denial of further examination in this case amounted to an abuse of discretion, it is important to note

that appellant was not denied the constitutional right to confrontation of Samuel, because there is generally no right to recross-examination of a witness. In *State v. Faulkner*, 56 Ohio St.2d 42, 46, 381 N.E.2d 934 (1978), the Ohio Supreme Court held:

> Although a defendant must have the opportunity to cross-examine all witnesses against him as a matter of right, *Kent v. State* (1884), 42 Ohio St. 426; *Weaver v. State* (1929), 120 Ohio St. 97, the opportunity to recross-examine a witness is within the discretion of the trial court. *Liberty Mutual Ins. Co. v. Gould* (1976), 266 S. C. 521, 224 S. E. 2d 715; *United States v. Morris* (C.A. 5, 1973), 485 F. 2d 1385. Only where the prosecution inquires into new areas during redirect examination must the trial court allow defense the opportunity to recross-examine. *See Alford v. United States* (1931), 282 U.S. 687.

{¶ 30} In applying this holding, this court has found that there is no absolute right to recross-examination even if new matters arise on redirect examination of a witness. *State v. Hartley*, 8th Dist. Cuyahoga No. 81706, 2003-Ohio-3946, ¶ 16, stating:

> Had the Supreme Court intended that all recross-examination, even of new matters, be permitted, it would have imposed a per se rule, not the abuse of discretion standard. * * * Hence, we do not interpret the "must" in *Faulkner* to indicate that recross-examination is mandatory, even when new evidence is presented during redirect examination.

{¶ 31} The redirect examination of Samuel consisted of two questions. The record does not reflect what the first question was, but in answering that question, Samuel clarified and repeated what Palmer said to Umstead, then repeated her prior testimony as to the order of the events she witnessed. In so doing, she included the fact that Umstead revved his engine "like he wanted to run him over." The second

question asked only about when the revving occurred. Samuel clarified that it was after Palmer got out of the car.

{¶ 32} Samuel testified on direct and cross-examination to the events she witnessed and the order in which they occurred. She stated that Umstead moved his car before getting out, retrieving a gun, and attacking Palmer. I cannot discern from the record that the city sought to inquire about new material or new issues in its re-direct examination. In *Hartley*, this court stated there are "no hard and fast rules on what constitutes new material for purposes of recross-examination." *Id.* at ¶ 20. We noted that "the [trial] court should seek to limit recross-examination to testimony on redirect examination which raises a new subject-matter that is both material and non-redundant in context." *Id.* Here, the only new information that Samuel testified on redirect examination was that Umstead revved the engine "like he was going to run him over." However, that fact was ultimately not at issue in trial and is not material. Appellant admitted he revved the engine, and the trial court based its verdict on its finding that appellant pointed a gun at Palmer, not on the revving of an engine or movement of a car.

{¶ 33} As to appellant's remaining assignments of error, I would find that the trial court did not err in prohibiting the use of the police report to impeach Palmer. There was no showing it contained a prior inconsistent statement or that Palmer was the author of the police report. I would find there was sufficient evidence presented to sustain the conviction for aggravated menacing where Palmer testified that he believed appellant would shoot him and further find the conviction

was not against the manifest weight of the evidence. Finally, I would find that appellant did not receive ineffective assistance of counsel where 1) trial counsel's failure to move for acquittal is moot where sufficient evidence was presented to sustain the conviction, and 2) trial counsel's failure to proffer the police report did not amount to ineffective assistance because the trial court properly disallowed the use of the police report to impeach Palmer.