[Cite as *State v. J.B.*, 2025-Ohio-3143.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                   :

      Plaintiff- Appellee,          :

                                  No. 114501

      v.                                       :

J.B.,                                            :

      Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** September 4, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-662571-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Thomas T. Lampman, Assistant Public Defender, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant J.B. appeals from the trial court's judgment entry denying his application to expunge the criminal records in this case. Prior to

denying his application, the trial court ordered J.B. to submit to a drug test and conditioned its decision on the results of that test. Since the trial court did not have the authority under the relevant sealing and expungement statutes to order J.B. to submit to a drug test upon filing an application for expungement, we vacate the trial court's judgment denying J.B.'s application and remand this case back to the trial court to proceed in a manner consistent with this opinion.

## I. Procedural History and Relevant Facts

### A. Background

{¶ 2} On December 28, 2021, J.B. pleaded guilty to one count of carrying concealed weapons, a misdemeanor of the first degree, and one count of receiving stolen property, a misdemeanor of the first degree. He was sentenced the same day. The trial court ordered J.B. to serve a one-year term of community-control sanctions. J.B.'s term of community control was terminated on December 28, 2022.

### B. Application for Expungement

{¶ 3} On March 21, 2024, J.B. filed an application to expunge this case pursuant to R.C. 2953.32(B). The trial court ordered an expungement report and investigation to be completed by the probation department. The State responded to J.B.'s application. The State advised the trial court that J.B.'s case was eligible for expungement and deferred to the trial court.

{¶ 4} On July 1, 2024, the court held a hearing on J.B.'s application, along with multiple other applicants seeking to either expunge or seal their cases. The judge issued the following advisement to all the applicants:

So what I am going to explain to everybody is that, I will hear from everybody, hear their case, but I am going to send everybody down for a drug screen today. Okay? And so if I determine pending the drug screen that you're eligible but you're going to be precluded because you think that — you know that you're going to come to test positive, I'm going to give you an opportunity to withdraw it now.

. . .

Because I don't have you on active probation. I don't know how you've been doing. I don't know what you've been doing for the past years, and I can't determine whether or not you're fully rehabilitated.

{¶ 5} An attorney for one of the applicants asked the judge if this requirement applied even if the underlying offenses were unrelated to drug use. The judge replied that it did. The judge explained that drug use contributes to crime and that "if you're testing positive for meth, you're actively participating in illegal acts."

{¶ 6} Counsel for J.B. objected to the trial court's order requiring J.B. submit to a drug test. Counsel explained, "As a general rule, where it's a broad policy, we think that would be built into statute. And particularly as it applies to someone who doesn't have drug charges and that's not what brought them here[.] Counsel's objection was overruled.

{¶ 7} The trial court held a hearing on J.B.'s application. The State did not object, leaving it to the trial court's discretion. At the conclusion of the hearing the judge stated:

Okay. So the same as I have with everybody else, pending the drug screen, pending passing the drug screen I'll grant your petition. Okay?

{¶ 8} On the same day, the trial court issued the following order, journalized on the docket:

Petition for expungement pending drug screen.

Petitioner ordered to be drug screened no later than 7/2/24, at State's costs. Failure to do so will result in dismissal of petition.

{¶ 9} On October 1, 2024, the trial court issued the following entry, denying J.B.'s application for expungement:

Motion for expungement of criminal record $50, filed., [sic] filed 03/21/2024 is denied.

Court held hearing on motion and referred defendant for a drug screen. Defendant tested positive for amphetamines. Defendant's EIR contains history of drug treatment, and later violations and ultimately termination. Defendant continued offending through the current case. This court cannot find that defendant is rehabilitated to the satisfaction of the court when still violating the law by consuming illegal drugs.

### C. Appeal

{¶ 10} J.B. filed a notice of appeal on the trial court's entry denying his application for expungement. On appeal, J.B. presents two assignments of error for our review:

1. R.C. 2953.32 does not authorize trial courts to order all expungement applicants submit to warrantless post-hearing urine screens, or to deny applications based on such test.

2. The trial court's blanket warrantless urine testing of expungement applicants violates the United States and Ohio Constitutions' prohibitions on unreasonable searches.

## II. Law and Analysis

### A. First Assigned Error for Review

{¶ 11} In his first assigned error for review, J.B. argues that R.C. 2953.32 does not authorize the trial court to order an applicant for expungement to submit to a

drug test and to base its decision on the results. Since there is nothing in the relevant expungement and sealing statutes that authorizes the trial court to order an applicant for an expungement to submit to a drug test upon filing an application for expungement, we sustain J.B.'s first assigned error.

### 1. Standard of Review

{¶ 12} As a condition for sealing and/or expungement of their criminal records, the trial court has adopted a blanket policy requiring each applicant before it to submit to a drug test. Generally, "[b]lanket policies that affect substantial rights are not favored under the law and should not be employed. But when a court implements a blanket policy, the appellate court reviews the application of that policy under an abuse of discretion standard." *Cleveland v. Umstead,* 2021-Ohio-10, ¶ 27 (8th Dist.) (Sheehan, J., dissenting), citing *State v. Beasley,* 2018-Ohio-16 (holding that the trial court abused its discretion in adopting a blanket policy of not accepting no-contest pleas); *State v. Switzer,* 2010-Ohio-2473, ¶ 15 (8th Dist.) (holding that the trial court abused its discretion by adopting a policy of not accepting plea agreements on the day of trial).

{¶ 13} However, before we address whether the trial court abused its discretion by adopting a broad blanket policy requiring all applicants submit to a drug test, we must first determine whether a trial court has the authority to order applicants to submit to drug testing in the first place.

{¶ 14} The Supreme Court of Ohio has recognized that "'it is the role of the legislature to address the statutory scheme on sealing records[.]'" *State v. G.K.,*

2022-Ohio-2858, ¶ 27, quoting *State v. Radcliff*, 2015-Ohio-235, ¶ 36. And "[a] court may not deviate from the requirements of a statute simply because it would prefer that the statute had been written differently." *Id.* Thus, we must look to the relevant expungement and sealing statutes to determine whether they confer this particular authority to the trial court. Since this issue involves a matter of statutory construction, it raises a question of law that we review de novo. *Magnus Internatl. Group v. Forster,* 2018-Ohio-2192, ¶ 10 (8th Dist.). *See also Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* 2014-Ohio-4809, ¶ 25; *Lang v. Ohio Dept. of Job & Family Servs.,* 2012-Ohio-5366, ¶ 12 ("A question of statutory construction presents an issue of law that we determine de novo on appeal.").

{¶ 15} The State argues that since the trial court determined that J.B. was not sufficiently rehabilitated, we must review the trial court's decision for an abuse of discretion. But the State's position puts the cart before the horse. Whether J.B. has been sufficiently rehabilitated is not the issue before us. Rather, the issue we must first address is whether the trial court has the authority to order an applicant to submit to a drug test upon the filing of an application for expungement, prior to making a rehabilitation determination. The status of J.B.'s rehabilitation is a separate issue altogether. As such, an abuse-of-discretion standard is inapplicable here.

### 2. Analysis

{¶ 16} R.C. 2953.31 through 2953.36 govern the expungement and sealing of criminal records in Ohio. When an offender files an application for expungement

or sealing, R.C. 2953.32(C) requires the trial court to hold a hearing on the application. J.B. directs us to relevant investigatory requirements that the State and trial court must engage in upon the filing of an application, specifically noting that upon the filing of an application "[t]he court shall direct its regular probation officer, a state probation officer, or the department of probation of the county in which the applicant resides to make inquiries and written reports as the court requires concerning the applicant." R.C. 2953.32(C). R.C. 2953.32(D)(1) sets forth a number of things the trial court is required to do at the hearing. J.B. contends that there is nothing in these sections requiring an applicant to consent to drug testing as a condition of applying for or obtaining an expungement. The State concedes as much, noting that R.C. 2953.32 is silent with respect to drug testing. Nonetheless, the State directs us to two specific sections in support of the trial court's authority to order applicants to submit to drug tests upon applying for expungement or sealing of their records. The sections cited by the State are R.C. 2953.32(D)(1)(c) and (D)(1)(h).

{¶ 17} We begin our analysis by looking at the plain language of a statute to determine whether it provides the trial court with the authority to order a drug test and condition its decision based on the results. "'"The primary goal of statutory construction is to ascertain and give effect to the legislature's intent," as expressed in the plain meaning of the statutory language.'" *State v. Sumlin,* 2025-Ohio-550, ¶ 19 (8th Dist.), quoting *State v. Pountney,* 2018-Ohio-22, ¶ 20, quoting *State v. Lowe,* 2007-Ohio-606, ¶ 9. In doing so, the words and phrases of the statute must

"be read in context and construed according the rules of grammar and common usage." R.C. 1.42. Thus, "our duty is 'to give effect to the words used, not to delete words used or to insert words not used.'" *State v. Maxwell,* 2002-Ohio-2121, ¶ 10, quoting *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127 (1969). "The general rule is that '"[i]f the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary."'" *Sumlin* at ¶ 19, quoting *Diller v. Diller,* 2023-Ohio-1508, ¶ 16, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.,* 74 Ohio St.3d 543, 545 (1996).

{¶ 18} One of the things a trial court must determine at the hearing is "whether the applicant has been rehabilitated to the satisfaction of the court." R.C. 2953.32(D)(1)(c). In making this determination, the State argues that R.C. 2953.32(D)(1)(h) lists a number of factors a trial court may consider in making this determination, particularly "[t]he cessation or continuation of criminal behavior . . . [and] [a]ny other circumstances that may relate to the offender's rehabilitation."

{¶ 19} First, R.C. 2953.32(D)(1)(h) is inapplicable in this case. R.C. 2953.32(D)(1)(h) is limited to applicants seeking to expunge or seal convictions for unlawful sexual conduct with a minor under a prior version of the Revised Code. R.C. 2953.32(D)(1)(h) is only applicable if the "applicant was an eligible offender of the type described in division (A)(3) of section 2953.36 of the Revised Code as it existed prior to April 4, 2023[.]" Prior to April 4, 2023, R.C. 2953.36(A)(3) provided that the expungement and sealing statutes do not apply to "[c]onvictions under

section 2907.04 of the Revised Code [unlawful sexual conduct with a minor], unless a court has issued an order pursuant to section 2950.151 of the Revised Code to terminate the offender's duty to comply with sections 2950.04, 2950.05, and 2950.06 of the Revised Code[.]" Former version of R.C. 2953.36(A)(3).

{¶ 20} Here, J.B. was not convicted of, nor is he seeking the expungement of, a conviction for unlawful sexual conduct with a minor. As such, R.C. 2953.32(D)(1)(h) is inapplicable to the case before us.

{¶ 21} Second, we look to the plain language of R.C. 2953.32(D)(1)(c) to determine if it authorizes a trial court to order an applicant to submit to a drug test upon filing of application for expungement. R.C. 2953.32(D)(1)(c) provides that at a hearing held pursuant to R.C. 2953.32(C), a trial court shall "[d]etermine whether the applicant has been rehabilitated to the satisfaction of the court." While this is a determination that the trial court must make prior to rendering a decision on an applicant's application, there is nothing in this language that can be construed as conferring authority to a trial court to order applicants to submit to a drug test as a condition for expungement.

{¶ 22} If we were to read R.C. 2953.32(D)(1)(c) as broadly as the State suggests, authorizing trial courts to order an applicant to submit to drug testing as a condition for expungement, what else could the trial court order within this broad reading of the statute? Could the trial court order a review of the applicant's social media accounts or the applicant's internet search history? Could the trial court order a search of the applicant's home or personal vehicle? There is no limiting

principle other than what information the court seeks to obtain to determine whether the applicant has been rehabilitated to its satisfaction.

{¶ 23} And finally, J.B. directs this court to R.C. 2953.32(C). Specifically, he cites to the portion of that subsection that requires a trial court to "direct its regular probation officer, a state probation officer, or the department of probation of the county in which the applicant resides to make inquiries and written reports as the court requires concerning the applicant." He claims nothing in this section requires an applicant to submit to drug testing. This is the extent of his argument.

{¶ 24} We begin our analysis of this section of the statute by looking at the plain language, specifically what constitutes an "inquiry." Inquiry is not defined in the statute but is commonly defined as "a request for information" or "a systemic investigation often of a matter of public interest." *Online,* https://merriam-webster.com/dictionary/inquiry (accessed Aug. 19, 2025) [https://perma.cc/57HR-TZXT]. In other words, "inquiry" simply means to request information or to conduct an investigation.

{¶ 25} The plain language of this section specifically grants the trial court authority over the probation department, requiring the court to order the probation department to "make inquiries and written reports" upon the filing of an application. It does not, however, confer similar authority over the applicant themself. So while we recognize that the trial court has the relatively broad authority to request information and conduct an investigation concerning the applicant through the probation department, it cannot be read to confer a similar type of authority over

the individual applicant. Likewise, this section of the sealing and expungement statute does not give the trial court the authority to order an applicant for sealing or expungement to submit to a drug test upon filing an application.

{¶ 26} Compare the probation department's statutory role in preparing presentence-investigation reports under R.C. 2951.03, to its statutory role in making "inquiries and written reports" under R.C. 2953.32(C). When preparing presentence-investigation reports, the General Assembly provides that "the officer making the report shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant, all information available regarding any prior adjudications of the defendant as a delinquent child and regarding the dispositions made relative to those adjudications, and any other matters specified in Criminal Rule 32.2." If the probation officer deems it "advisable," the officer's investigation "may include a physical and mental examination of the defendant." R.C. 2951.03(A). The statute further provides that "[a] physical examination of the defendant may include a drug test consisting of a chemical analysis of a blood or urine specimen of the defendant to determine whether the defendant ingested or was injected with a drug of abuse."

{¶ 27} We presume that "the General Assembly acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *In re G.M.,* 2011-Ohio-4090, ¶ 16 (8th Dist.), citing *State v. Vanderbilt,* 37 Ohio St. 590, 960 (1882). The General Assembly could have granted similar bodily access over an applicant for sealing or expungment like it did for a

defendant convicted of a felony awaiting sentencing.  It chose not to do so.  As such, we will not read language into the statute that the General Assembly could have, but did not, include.

{¶ 28} The State contends that "the trial court had no interaction with J.B. since his probation terminated in 2022.  Other than a drug screen, how could the trial court satisfy its inquiry into whether J.B. was still abusing illegal drugs?"  We must first note that the convictions J.B. sought to expunge are not drug offenses, and the court's order applied not only to J.B., but to every applicant present at the hearing, regardless of the type of offense they were seeking to seal or expunge.  And while  requiring an applicant seeking an expungement of a drug offense to submit to a drug test may make sense from a public policy perspective, the Supreme Court has cautioned that with respect to the statutory scheme concerning sealing and expunging records, "we may not, under the cloak of inherent judicial authority, intrude upon the province of the legislative branch to make policy judgments in this area. . . . A court may not deviate from the requirements of a statute simply because it would prefer that the statute had been written differently."  *G.K.,* 2022-Ohio-2858, at ¶ 27.

{¶ 29} If the General Assembly wished to grant the trial court the authority to order an applicant submit to a drug test upon filing for expungement, the General Assembly could have done just that.  There are numerous examples in the criminal code where the General Assembly authorizes individuals to submit to drug testing.  *See*  R.C. 2929.15(A)(1) and 2929.17(H) (authorizing a trial court to order a

defendant to submit to random drug testing as a condition of community-control sanctions imposed for a felony conviction); R.C. 2929.27(A)(8) (authorizing a trial court to order a defendant to submit to random drug testing as a condition of community-control sanctions imposed for a misdemeanor conviction); R.C. 2951.041(D)(3) (requiring a trial court that grants a defendant's request for intervention in lieu of conviction to "submit to regular random testing for drug and alcohol use"); R.C. 2935.36(A) (allowing the prosecutor to "require, as a condition of an accused's participation in a [pretrial diversion program], the accused to pay a reasonable fee for supervision services that include, but are not limited to, monitoring and drug testing"); R.C. 2951.03(A) (providing that if a probation officer preparing a presentence-investigation report considers it advisable, the officer's investigation may include drug testing of the defendant).

{¶ 30} Furthermore, there are jurisdictions outside of Ohio that have specifically required clean drug tests as a condition for expungement and sealing of records. For example, in Illinois, an applicant seeking to expunge or seal the record of a criminal offense may petition a circuit court for relief. *Ill.Ann.Stat.,* Ch. 20, Sec. 2630/5.2(b)/(c). In doing so, Illinois law requires the petitioner to attach proof to the petition showing the absence of illegal substances in his or her body. *Ill.Ann.Stat.,* Ch. 20, Sec. 2630/5.2(d)(3).

{¶ 31} The General Assembly could have authorized the trial court to order a drug test upon an applicant's filing for an expungement but chose not to. And "'[t]here is no authority under any rule of statutory construction to add to, enlarge,

supply, expand, extend or improve the provisions of the statute to meet a situation not provided for.'" *State v. Bates,* 2017-Ohio-4445, ¶ 9 (8th Dist.), quoting *State ex rel. Foster v. Evatt,* 144 Ohio St. 65 (1944), paragraph eight of the syllabus.

{¶ 32} Since nothing in the expungement and sealing statutes authorizes the trial court to order an applicant to submit to a drug test upon filing an application for expungement, let alone establish a broad blanket policy requiring every applicant to submit to drug testing upon filing an application for sealing or expungement, we find that the trial court erred in ordering J.B. to do just that. As such, J.B.'s first assignment of error is sustained.

**III. Conclusion**

{¶ 33} The trial court did not have the authority to order J.B. to submit to a drug test upon filing an application for expungement and to base its decision on the results of that drug test. For this reason, we vacate the trial court's judgment denying J.B.'s application and remand this case back to the trial court to proceed in a manner consistent with this opinion.

{¶ 34} Since our decision on J.B.'s first assignment of error is dispositive of this appeal, J.B.'s second assignment of error is moot and we decline to address it.

{¶ 35} Judgment vacated, and case remanded.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 36} R.C. 2953.32 grants the trial court the power to offer leniency to offenders. In determining whether to wield that power, the legislature requires the trial court to determine certain factors, including whether criminal proceedings are pending against the applicant and whether the applicant has been rehabilitated "to the satisfaction of the court." R.C. 2953.32(D)(1)(b)-(c). The majority's conclusion that the trial court lacks any authority to directly investigate the applicant necessarily precludes the trial court from having access to any information upon which it could determine that the offender has been rehabilitated beyond a criminal history. If the probation department is arbitrarily limited to reviewing the offender's criminal history because it cannot be directed to investigate the applicant themselves, for instance by conducting a voluntary drug test or reviewing social media, both of which are questioned by the majority, the trial court could only

answer whether the offender has pending cases.[1]  Absent an ongoing history of criminal conduct, no court will have any information available to make the statutorily required determination about the applicant's rehabilitation.

{¶ 37} A drug test is a minimal intrusion that yields a wealth of information to demonstrate an applicant's law-abiding lifestyle.  It is one of few investigatory steps that can actually reveal timely information: an applicant's criminal history only reveals that the applicant was not caught committing a criminal act, not that they actually lead a law-abiding lifestyle.  Nothing prevents an applicant from declining to undergo that drug test.  While declining to take the test could lead to a denial of the expungement request, expungement is a privilege and not a right.  The trial court's invocation of its investigatory responsibility to order the probation department to investigate the applicant's current drug use is reasonable and, importantly, statutorily permissible.

{¶ 38} The majority declares that R.C. 2953.32(C) does not authorize the trial court to direct a probation department to conduct drug testing of an applicant after the filing of an application for expungement or sealing of criminal records.  The parties' focus, however, is on the question of whether a trial court has authority to impose a blanket policy requiring all applicants to submit to drug testing as a condition of expungement.  J.B. acknowledges some authority for the trial court to

---

[1] As the trial court noted in this case, the drug test was not per se mandatory.  The failure to submit to the drug test would result in the application being denied but subject to refiling.

initiate investigations into the applicant but claims that the trial court exceeded that authority by "expanding the court's own investigatory role after the hearing." Appellant's Brief at p. 6. J.B.'s argument essentially assumes that R.C. 2953.32(C) authorized an investigation into the applicant, but that assumption does not answer the question of whether a trial court has authority to create a bright-line rule that all applicants must submit to drug testing as a condition of obtaining an expungement or sealed record at the statutorily mandated hearing.

{¶ 39} As the majority and J.B. recognize, subdivision R.C. 2953.32(C) provides that "[t]he court shall direct its regular probation officer, a state probation officer, or the department of probation of the county in which the applicant resides to make inquiries and written reports as the court requires concerning the applicant." Thus, the threshold question presented by the majority is whether the disputed drug test falls under the court's authority to direct the probation department to "make inquiries." Despite that framing, we have not been provided with any discussion from the parties with which to answer that question. Both J.B. and the State ignore the language under R.C. 2953.32(C) beyond a solitary reference to that provision. Quite simply, whether R.C. 2953.32(C) authorizes a trial court to direct the probation department to conduct a drug test as part of its investigation is not a question this panel has been asked to answer.

{¶ 40} J.B.'s argument regarding the scope of R.C. 2953.32 is limited to the conclusory statement that "[n]othing in these provisions requires applicants to submit to anything as a condition of receiving a hearing on their application nor

authorizes any *additional* investigation by the trial court before or after the hearing."
(Emphasis added.) That does not address the trial court's mandate to direct the
probation department to investigate as required under R.C. 2953.32(C), and J.B. has
not explained why the phrase "to make inquiries" only prevents "additional
investigation" — an argument that necessarily presumes that some investigation is
permitted. What investigation is permissible if it does not include obtaining
evidence directly from the applicant seeking to shield his past misconduct from the
public?

{¶ 41} J.B.'s focus in this appeal is on the blanket nature of the trial court's
policy and constitutional questions implicated by the administration of that kind of
drug test; in other words, whether a trial court can rely on a general policy that all
applicants submit to drug testing as part of the expungement process or whether the
drug testing violated his constitutional rights. I would reject that argument as
presented. Whether the drug test is individualized to the requestor's past conduct
or part of a policy on all seekers of expungements is irrelevant. This is not akin to a
trial judge having a blanket policy against no-contest pleas. As long as the
requirement is related to the court's goal of confirming rehabilitation and is
reasonable and not overly intrusive, it cannot be said it is unlawful. Because this is
J.B.'s sole argument presented, I cannot join the majority's policy decision limiting
the investigative authority of the trial court in expungement cases. In general,
appellate courts are not responsible for, and should refrain from, filling the
appellant's silence with our own analysis and authority. *State v. Quarterman*, 2014-

Ohio-4034, ¶ 19 (concluding that appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties"), citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part); *see also* App.R. 16(A)(7). The only path to determining the extent of the trial court's authority under R.C. 2953.32 is to analyze and apply the language of subdivision (C), which has not been addressed, discussed, or even acknowledged by either party.

{¶ 42} Instead of recognizing the limitations of the argument presented, the majority concludes that R.C. 2953.32(C) only authorizes the trial court to exercise authority over the probation department and not the applicant himself. *See* majority opinion at ¶ 25. That conclusion seems to be at odds with the majority's recognition that the phrase "to make inquiries" means to conduct an investigation. What type of investigation? The majority does not say. Instead, citing the need for an unspecified limiting principle to guard against judicial overreach, the majority simply concludes that a drug test is beyond the scope of the investigation the trial court is authorized to initiate. That conclusion is not tethered to any specific language of the statute and instead is a policy decision based on the majority's sense of what a court should be able to investigate in determining whether an offender has been rehabilitated.

{¶ 43} As the majority ironically notes, the legislature is well aware of how to expressly authorize permissible forms of investigation and chose not to with respect to R.C. 2953.32(C).

{¶ 44} The majority explains that R.C. 2951.03(A)(1), the statute authorizing a presentence-investigation report, includes explicit authority authorizing the probation department broad discretion to consider physical or mental examinations of defendants without the trial court's intervention, which includes drug testing. That statute shares little in common with R.C. 2953.32. The presentence-investigation statute provides the probation department with unilateral authority to conduct an investigation at its own discretion, but within the statutory constraints. On the other hand, the expungement statute provides the trial court with authority to direct the probation department to investigate the applicant to the extent that the trial court requires. The scope of that investigatory authorization is not defined by statute.

{¶ 45} More important, according to the majority, because R.C. 2951.03(A)(1) expressly authorizes a drug test but R.C. 2953.32(C) does not, the investigation conducted for expungement purposes cannot include a drug test. But R.C. 2951.03(A)(1) provides additional investigatory tools for the probation department not contained in R.C 2953.32(C). Under R.C. 2951.03(A)(1), for example, the probation officer "shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant . . . ." Following the majority's logic, a trial court cannot direct the probation department to inquire into the applicant's criminal record or even the circumstances of the offense because the legislature failed to expressly include those forms of investigation under R.C. 2953.32(C). What then is left to investigate under that

overly narrow reasoning? Had the legislature intended to place limitations as to the scope of that investigation, it would have expressly provided those. Instead, it granted an investigatory power to the trial court as it requires to gather information in order to determine whether to grant an offender leniency in the form of shielding their past misconduct from public scrutiny.

{¶ 46} Implicit in the majority's conclusions, the statutorily authorized investigation does not include a search for any evidence or facts, which instead inherently limits the investigation to a ministerial task, a collection of existing records. If the investigatory role cannot be used to obtain facts upon which the offender's rehabilitation can be assessed, then it is perfunctory and is limited to a simple review of the offender's history of criminal conduct. What other form of investigation would be allowed by the majority? Either way, that conclusion is not borne from the plain language of the statute and goes well beyond the scope of the question presented for our review.

{¶ 47} Notwithstanding, at the very least, the State should be provided with an opportunity to respond to the majority's newly framed argument. Otherwise, we should refrain from creating a bright-line rule forever limiting what form of investigation can occur for the purposes of expungement. *State v. Tate*, 2014-Ohio-3667, ¶ 21, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170 (1988) ("[A]ppellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue.'").

**{¶ 48}** For this reason, I cannot join the majority's decision. I respectfully dissent.